## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENAN GAJAROV, et al.,          )
                                           )
             Plaintiffs,         )    2:20-cv-01017
                                           )
                  v.          )    Chief Judge Mark R. Hornak
                                           )
ALLEGHENY COUNTY OFFICE    )
OF CHILDREN, YOUTH, &         )
FAMILIES, et al.,              )
             Defendants.

## OPINION

**Mark R. Hornak, Chief United States District Judge**

      This case involves an eight-month-old child who was removed from the care and custody of his parents for eighteen (18) days after a Children's Hospital of Pittsburgh ("Hospital") physician suspected child abuse when the child's parents brought the child to the Hospital emergency room with a fractured leg. The Hospital reported the injury to Allegheny County's ("County") child welfare officials. The parents, who speak little English, regained custody about three (3) weeks later when an independent physician provided an alternative explanation for the child's injury—an explanation that the parents claim they had offered to the physician and child welfare employees all along. The parents have now sued the Hospital, the physician, the County child welfare agency, several individual child welfare employees, and the County.

      The questions for the Court at this stage of litigation are whether the Plaintiff-parents have pled enough facts to state a plausible claim for relief against each Defendant, and, even if they did, whether any Defendant is immune from potential liability or should otherwise be dismissed from the case.

For the reasons that follow, the Court concludes that the Allegheny County Defendants' Motion to Dismiss (ECF No. 28) will be granted, with limited leave to amend. The Court will hold in abeyance further proceedings as to the Motion to Dismiss (ECF No. 30) and Motion to Strike (ECF No. 32) filed by UPMC Defendants.

## I.    BACKGROUND

### A.  Procedural Background

On May 12, 2020, Plaintiffs filed a Complaint in the Allegheny County Court of Common Pleas, alleging federal constitutional claims and state law tort claims against Allegheny County; the Allegheny County Office of Children, Youth & Families ("CYF"); Mr. Marc Cherna, the Director of the Allegheny County Department of Human Services, which oversees CYF; and Ms. Josette Pickens and Ms. Ashley Moultrie, CYF caseworkers (collectively, "County Defendants"). (ECF No. 1-2.) Plaintiffs also brought state law tort claims against UPMC Children's Hospital of Pittsburgh and Dr. Adelaide Eichman (collectively, "UPMC Defendants"). (*Id.*) The County Defendants removed the case to this Court on July 7, 2020. (ECF No. 1.) In August 2020, all parties filed motions to dismiss. (ECF Nos. 12, 14.) On August 26, 2020, Plaintiffs then filed an Amended Complaint, which is the subject of the Defendants' subsequent Motions and this Opinion. (*See* ECF No. 18.)

In their Amended Complaint, Plaintiffs bring federal law claims against the County Defendants for a state-created danger/substantive due process violation (Count II) and unconstitutional policies and customs (Count III), and state law claims asserting "vicarious liability/intentional infliction of emotional distress" (Count V). Plaintiffs bring state law claims against the UPMC Defendants for negligent infliction of emotional distress (Count I) and negligence (Count IV).

The County Defendants[1] filed a Motion to Dismiss pursuant to Rule 12(b)(6). (ECF No. 28.) The UPMC Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) and a Motion to Strike Immaterial, Impertinent, and Scandalous Material from Plaintiffs' Amended Complaint pursuant to Rule 12(f). (ECF Nos. 30, 32.) Plaintiffs responded to all Motions. (*See* ECF Nos. 35, 37, 39.) The UPMC Defendants filed reply briefs. (*See* ECF Nos. 41, 42.)

### B. <u>Factual Background</u>

According to the Amended Complaint, Plaintiffs Kenan Gajarov and Lala Jamalova are from Azerbaijan and speak very little English. (ECF No. 18, ¶ 21.) On or around September 16, 2018, Plaintiffs took their eight-month-old son ("R.G.") to the pediatrician after R.G. awoke in the night inconsolably crying. (ECF No. 18, ¶ 11.) The pediatrician considered teething to be the source of the pain and prescribed Tylenol. (*Id.* ¶ 12.) The next day Plaintiffs noticed that R.G.'s pain had not subsided and that there might be something wrong with his leg. (*Id.* ¶ 13.) They returned to the pediatrician who advised them to take R.G. to the emergency room at UPMC Children's Hospital. (*Id.* ¶ 13.)

At the Hospital, R.G. was diagnosed with a fracture of his right tibia. (*Id.* ¶¶ 13–14.) On or around September 17, 2018, Defendants Allegheny County and CYF received a report of R.G.'s injuries. (*Id.* ¶ 15.) CYF consulted with Defendant Dr. Adelaide Eichman, a physician at the Children's Advocacy Center ("CAC") of the Hospital. (*Id.* ¶¶ 15–18.) Dr. Eichman reported that the fracture was likely due to child abuse, and that R.G. "was not mobile, due to low muscle tone,

---

[1] The County Defendants' Motion to Dismiss was not filed on behalf of Ms. Moultrie. (*See* ECF No. 29, at 1.) Accordingly, the Court's reference to the "County Defendants" throughout the rest of this Opinion does not include Ms. Moultrie. The record shows that the Complaint was never served on Ms. Moultrie. According to the County Defendants' Motion to Dismiss, Ms. Moultrie no longer works for Allegheny County and was not served. (*Id.* at 1 n.1.) Defense counsel informed Plaintiffs' counsel that Ms. Moultrie is believed to be a resident of the state of Georgia. (*Id.*) Because more than ninety (90) days have passed since the Amended Complaint was filed, the Court now provides Notice to the Plaintiffs pursuant to Federal Rule of Civil Procedure 4(m) that it intends to dismiss the case without prejudice against Ms. Moultrie, unless service is completed and proof of same is filed on the docket not later than fourteen (14) days of the date of this Opinion. *See* Fed. R. Civ. P. 4(m).

and would not have been able to cause [the] tibia fracture on his own." (*Id.* ¶¶ 16, 18.) Dr. Eichman did not consult with a specialist in pediatric orthopedics. (*Id.* ¶ 18.) Plaintiffs instead believed that the injury was caused by R.G.'s leg getting stuck in the slats of his crib and said so at the time. (*Id.* ¶¶ 22, 38.)

Plaintiffs say that CYF caseworkers failed to thoroughly investigate alternate causes of injury, hurried Plaintiffs for an explanation for the injury, and did not accommodate Plaintiffs' need for a translator. (*Id.* ¶¶ 21–22.) The day after CYF received a report of R.G.'s injury, County Defendants secured an Emergency Custody Authorization in state court, resulting in R.G.'s placement in a foster home. (*Id.* ¶ 19.) A shelter care hearing was held three (3) days later, at which point legal and physical custody of R.G. was transferred to CYF. (*Id.* ¶ 25.)

Two (2) weeks later, CYF learned from Plaintiffs' counsel that an independent pediatric orthopedic surgeon was in the process of concluding that there were alternate explanations for the cause of the tibia fracture, including that R.G.'s leg could have been injured by entanglement in his crib. (*Id.* ¶ 26.) Upon learning of alternate explanations for R.G.'s injury, CYF transferred R.G. back to the custody and care of Plaintiffs. (*Id.*) At this point, R.G. had been removed from his parents' care for around eighteen (18) days. (*Id.* ¶ 27.) Plaintiffs assert that they experienced severe emotional and psychological distress related to R.G.'s removal, including depression, headaches, and sleeplessness. (*Id.* ¶ 70.)

## II.   <u>LEGAL STANDARD</u>

A claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court conducts a two-part analysis and first separates the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court "may disregard any legal conclusions," *id.*, and

4

then must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Court need not accept as true any unsupported conclusions, unsupported inferences, nor "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### III.   <u>DISCUSSION</u>

The County Defendants filed a Motion to Dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6). (ECF No. 28.) They make several arguments in support of this Motion. (*See* ECF No. 29.) The County Defendants contend that Ms. Josette Pickens and Mr. Marc Cherna cannot be liable because Ms. Pickens is entitled to absolute and qualified immunity and Mr. Cherna is entitled to qualified immunity for all claims against them; that CYF should be dismissed as a Defendant because it is not a "person" capable of being sued under § 1983; and that the claims against Mr. Cherna should be dismissed for the additional reason that the Complaint does not establish his personal involvement or a basis for individual liability. The County Defendants further argue that Plaintiffs fail to state a substantive due process claim at Count II and fail to show that an unconstitutional policy or custom existed, let alone one that harmed Plaintiffs, a showing necessary to support the claim at Count III.

As discussed below, the Court concludes the following: (1) Ms. Pickens is not entitled to absolute immunity; (2) CYF will be dismissed as a Defendant because Plaintiffs also sued Allegheny County and CYF is not a distinct agency or entity amenable to being sued; (3) the Amended Complaint sufficiently alleges Mr. Cherna's direct involvement to support a claim brought pursuant to 42 U.S.C. § 1983; (4) Plaintiffs plausibly state a claim at Count II; (5) Ms. Pickens and Mr. Cherna are entitled to qualified immunity as to the otherwise viable federal claims; and (6) Plaintiffs fail to state a claim at Count III. Because the Court is granting the dismissal of the federal claims asserted against the County Defendants, it will hold in abeyance further action relative to the state claims asserted as to the County Defendants, and as to the claims asserted against UPMC Defendants, pending the exercise/non-exercise by Plaintiffs of the limited leave to amend authorized by this Opinion.

### A. <u>Absolute immunity</u>

State officials, sued in their individual capacities, may assert the defense of absolute immunity in certain cases. Here, County Defendants contend that Ms. Pickens, as a CYF employee, is entitled to absolute immunity for the actions she allegedly took in this case because she was acting in a prosecutorial capacity. (ECF No. 29, at 6.) Plaintiffs offer no response to Ms. Pickens's invocation of absolute immunity.[2] Nonetheless, the Court will assess the application of this doctrine, and concludes that at this juncture, the Court cannot conclusively say that absolute immunity completely shields Ms. Pickens from liability.

---

[2] Should this case proceed further in this Court, Plaintiffs' counsel is advised to "get in the game" and respond to arguments raised by the opposing party. *See Lowe v. Csenge Advisory Grp.*, No. 19-00980, 2020 WL 5628993, at *7 n.8 (W.D. Pa. Sept. 21, 2020) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested." (quoting *Lada v. Delaware Cty. Cmty. Coll.*, No. 08-4754, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009))). As to the Motion to Dismiss now pending, the Court will nonetheless assess the dismissal arguments made by the County Defendants, but the parties should not assume that the Court will do likewise should a similar situation arise down the line.

"Unlike a qualified immunity analysis, which often involves an initial inquiry into whether the facts alleged show a violation of a constitutional right, . . . the question of absolute immunity can be addressed as a threshold issue." *B.S. v. Somerset Cty.*, 704 F.3d 250, 261 n.22 (3d Cir. 2013). Public officials who perform "special functions" may be entitled to absolute immunity. *Id.* at 261. The Third Circuit has recognized that the "justifications for according absolute immunity to prosecutors sometimes apply to child welfare employees." *Id.* at 262. Like prosecutors, child welfare employees often "must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children." *Id.* at 263 (quoting *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 496 (3d Cir. 1997)). Obtaining dismissal based on absolute immunity "should not be easy travel," and the defendant's burden to establish such immunity is "uniquely heavy." *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020).

Absolute immunity for child welfare employees is appropriate when the employee formulates and presents recommendations to the court regarding a child's custody determination. *B.S.*, 704 F.3d at 262–63. Not only does absolute immunity protect caseworkers' judicial recommendations, but it also protects the "'gathering and evaluation of information' to formulate those recommendations and to prepare for judicial proceedings." *Id.* at 269 (citation omitted). However, administrative or investigative actions taken "outside the context of a judicial proceeding" are not protected by absolute immunity. *Id.* at 262, 270. "[T]he question of where to draw the line between prosecutorial and investigative functions is challenging." *Guest v. Allegheny Cty.*, No. 20-130, 2020 WL 4041550, at *10 (W.D. Pa. July 17, 2020). It is appropriate for the Court to consider the specific function served by each of the defendant's actions, and at times to

apply absolute immunity for some actions but not for others. *See Fogle*, 957 F.3d at 164–65; *B.S.*, 704 F.3d at 267–69.

The relevant question for the Court is whether Ms. Pickens "function[ed] as the state's advocate when performing the action(s)" that gave rise to the violations Plaintiffs seek to redress, or whether those claims instead arose from unprotected "administrative or investigatory actions." *See B.S.*, 704 F.3d at 265 (citation and quotations omitted); *see also Ernst*, 108 F.3d at 497 n.7.

The Court concludes that certain of the actions Ms. Pickens allegedly took in this case were made for the purposes of recommending a child-custody determination in a judicial proceeding and are covered by absolute immunity. The Amended Complaint asserts that within one (1) day of Ms. Pickens's involvement in this case, CYF obtained an Emergency Custody Authorization from the state court. (ECF No. 18, ¶ 19.) Three (3) days later, a shelter care hearing was held before a judicial hearing officer. (ECF No. 18, ¶ 25.) Ms. Pickens appeared before the judicial officer at that hearing. (*See* ECF No. 18-1, at 10.) Within a week, Ms. Pickens reported her findings in a dependency petition that she prepared to submit to the state family court. (ECF No. 18, ¶ 22; ECF No. 18-1.)[3] To be sure, "[t]he key to the absolute immunity determination is not the timing of the investigation relative to a judicial proceeding, but rather the underlying function that the investigation serves and the role the caseworker occupies in carrying it out." *B.S.*, 704 F.3d at 270. Here, the underlying function of Ms. Pickens's conduct in the above-referenced judicial proceedings and in her preparation of the dependency petition was to "formulat[e] and present[] recommendations to a court." *See id.* at 266. The Court concludes that such actions were therefore prosecutorial by nature, and asserted liability for those actions is barred by absolute immunity.

---

[3] The Court may properly consider the dependency petition because the Amended Complaint "explicitly relie[s]" upon it. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation and citation omitted). The petition is not only referenced throughout the Amended Complaint, but it is also attached as an exhibit. (*See* ECF No. 18-1.) As such, it became part of the Amended Complaint for all purposes. Fed. R. Civ. P. 10(c).

But the facts alleged in the Amended Complaint do not allow the Court to conclude at this point that Ms. Pickens's pre-removal actions were also prosecutorial. It is unclear from the Amended Complaint precisely when Ms. Pickens consulted with the UPMC physician or spoke with Plaintiffs. As a result, the Court cannot on this record and at this point decipher whether the underlying function of those actions was prosecutorial or investigative. Because Plaintiffs' claim against Ms. Pickens involves those actions, it would be "premature to conclusively determine" whether she is entitled to absolute immunity as to potential liability for those actions. *See Guest*, 2020 WL 4041550, at *10. The motion to dismiss based on absolute immunity grounds will be granted to the extent that the claims against Ms. Pickens are based on her preparation of the dependency petition and her preparation for and advocacy at the state judicial proceedings. The application of absolute immunity is otherwise denied without prejudice.

### B. Claims against Defendant CYF

Plaintiffs sued both Allegheny County and the Allegheny County CYF. The County Defendants argue that the claims against CYF must be dismissed because CYF and Allegheny County are a single entity. (ECF No. 29, at 15.) Once again, Plaintiffs do not respond to this argument, though they do recognize in their Amended Complaint that CYF is a "governmental organization operated by Allegheny County." (*See* ECF No. 18, ¶ 5.)

The Third Circuit has held that a municipal agency cannot be sued alongside a municipality when the municipal agency is merely an administrative arm of the municipality itself. *See, e.g.*, *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) (citing *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 n.4 (3d Cir. 1997)). For purposes of § 1983 liability, a municipality and a municipal agency are a single entity. *Id.*

Because the Allegheny County CYF is an administrative arm of Allegheny County, the Court will dismiss CYF as a defendant from this action. *See Thompson v. Hens-Greco*, No. 16-1100, 2017 WL 4779228, at *4 (W.D. Pa. Sept. 20, 2017), *report and recommendation adopted*, No. 16-1100, 2017 WL 4712714 (W.D. Pa. Oct. 18, 2017) (dismissing CYF as a defendant because it is a department of Allegheny County, another named defendant in the case); *Kane v. Chester Cty. Dep't of Children, Youth & Families*, 10 F. Supp. 3d 671, 686 (E.D. Pa. 2014) (dismissing CYF as a defendant because it is not a separate legal entity subject to suit). All claims against CYF as any sort of distinct or independent entity are dismissed with prejudice.

### C. **Mr. Cherna's personal involvement**

The County Defendants move for the dismissal of all federal claims asserted against Mr. Cherna on the basis that Plaintiffs have failed to sufficiently plead Mr. Cherna's personal involvement in the alleged wrongdoing. (ECF No. 29, at 16–18.) Plaintiffs respond that the Amended Complaint alleges various facts as to Mr. Cherna sufficient to impose individual liability against him. (ECF No. 36, at 15–16.) The Court agrees with Plaintiffs on this issue.

Liability in claims asserted via 42 U.S.C. § 1983 requires personal involvement in the alleged wrongs. *See Hatfield v. Berube*, 714 F. App'x 99, 102 (3d Cir. 2017); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Supervisory liability is available only if the supervisor (1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or (2) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Dinote v. Danberg*, 601 F. App'x 127, 131 (3d Cir. 2015) (citing *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, 575 U.S. 822 (2015)). Allegations of a defendant's

participation or actual knowledge and acquiescence in the alleged wrongdoing must be made "with appropriate particularity." *Rode*, 845 F.2d at 1207.

Plaintiffs plead that Mr. Cherna has a history of creating policies that train CYF caseworkers to remove children from their parents' custody without performing competent evaluations. (ECF No. 18, ¶ 24.) In support of this assertion, Plaintiffs cite allegations that Mr. Cherna instructed caseworkers to spend less time investigating each suspected case of abuse, and that he commissioned the University of Pittsburgh to perform a study to demonstrate that CYF caseworkers required lighter caseloads to perform their work correctly. (ECF No. 36, at 15–16.) On their own, these would not be enough to generally establish that Mr. Cherna was deliberately indifferent to any potential constitutional harms stemming from such a policy. The alleged facts show that Mr. Cherna, as head of the Department that runs CYF, reviewed and managed the resources and demands of the agency. But such facts alone would not establish that Mr. Cherna was actually aware of or had consciously disregarded a serious risk of harm in the situation at the center of this case. *See Kedra v. Schroeter*, 876 F.3d 424, 437–38 (3d Cir. 2017) (discussing the "deliberate indifference" standard in the context of substantive due process claims). Nor does the Amended Complaint establish that a risk of harm was so obvious that it should have been known without more. *See id.*

But the allegations of the Amended Complaint, which must be taken as true, sufficiently allege Mr. Cherna's direct involvement in this specific case. The Amended Complaint avers that Mr. Cherna, along with other County Defendants, "had an opportunity to contact a translator to discuss more clearly parent Plaintiffs' explanation of probable cause of injury," and that he gave "specific direction" to CYF caseworkers in this case. (ECF No. 18, ¶ 38.) The Amended Complaint further avers that Mr. Cherna specifically refused to consider any alternative cause of injury. (*Id.*

11

¶ 27.) Mr. Cherna is also alleged to have secured the Emergency Custody Authorization in this case through the CYF caseworkers. (*Id.* ¶ 19.) Given these allegations as set forth in Amended Complaint, the Court will not dismiss claims against Mr. Cherna based on a lack of personal involvement.

**D. State-created danger/substantive due process violation pursuant to 42 U.S.C. § 1983 (Count II)**

Turning to the substantive due process/state created danger claim, the County Defendants argue in their Motion to Dismiss that Plaintiffs fail to state a claim upon which relief can be granted. They also assert a qualified immunity defense as to Mr. Cherna and Ms. Pickens. Because, as discussed above, the Court will dismiss the claims against CYF, the remaining County Defendants are Ms. Pickens, Mr. Cherna, and Allegheny County.

**1. State-created danger theory**

At the outset, the Court notes that Plaintiffs allege a substantive due process claim based in part on a "state-created danger" theory of liability. In their Motion to Dismiss, the County Defendants argue that Plaintiffs did not plead all elements of a state-created danger claim. Once again, Plaintiffs do not respond to County Defendants on this particular point. Nonetheless, the Court concludes that the state-created danger claim is not viable in this case because Plaintiffs allege that state actors—not private parties—are the direct cause of their claimed harm.

"As a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989). The Third Circuit recognizes an exception to this general rule: the state-created danger theory of liability. *See Johnson v. City of Philadelphia*, 975 F.3d 394, 398–400 (3d Cir. 2020) (citing *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996)). That theory of liability requires a plaintiff to plead four (4) elements: "first, foreseeable and fairly direct

harm; second, action marked by 'a degree of culpability that shocks the conscience;' third, a relationship with the state making the plaintiff a foreseeable victim, rather than a member of the public in general; and fourth, an affirmative use of state authority in a way that created a danger, or made others more vulnerable than had the state not acted at all." *Id.* at 400 (citing *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018)).

It is unnecessary for the Court to address each element of the Plaintiffs' state-created danger claim because it fails from the start. The state-created danger theory does not apply when the plaintiff is directly harmed by a state actor, rather than by a private party. *See Mintz v. Upper Mount Bethel Twp.*, No. 12-6719, 2013 WL 3090720, at *6–7 (E.D. Pa. June 20, 2013). In other words, an "indispensable precondition" to a court's application of the state-created danger theory is "an act of 'private violence.'" *See Gray v. Univ. of Colorado Hosp. Auth.*, 672 F.3d 909, 927 (10th Cir. 2012) (explaining that a "private act must directly cause the [plaintiff's] harm before [the court can] even so much as consider the state-created danger theory"). This is so in that the heart of such a claim is that a private actor harmed the plaintiff, but that the harm came about as a consequence of the "state" taking steps to "create a danger."

Here, the "most glaring defect" of the claim is that the Amended Complaint does not allege that a private act directly caused the harm at issue. *See Gray*, 672 F.3d at 927. The Amended Complaint alleges as to this claim that the immediate or direct cause of Plaintiffs' injury was the conduct of County Defendants, as state actors, in removing R.G. from Plaintiffs' care. The alleged harm stemmed directly from the removal itself, and the actions to effectuate the removal were conducted by the County Defendants as public actors proceeding under the color of law. Because Plaintiffs alleged that they were directly harmed by the County Defendants, as to them, this is not

a state-created danger case. *See Sanford v. Stiles*, 456 F.3d 298, 307 n.8 (3d Cir. 2006) (citing *Ziccardi v. City of Philadelphia*, 288 F.3d 57 (3d Cir. 2002)).

### 2.  <u>Substantive due process claim</u>

The Court will next proceed to analyze Plaintiffs' substantive due process claim based on the alleged direct actions of the County Defendants. Though this is a close call for the Court, the Court concludes that Plaintiffs have plausibly pled facts sufficient to establish a viable substantive due process claim.

The elements of a substantive due process claim are that: (i) defendants acted under color of law; (ii) a protected property or liberty interest was at stake; (iii) the defendants had a duty of care toward the plaintiff; and (iv) a deprivation within the meaning of the due process clause occurred. *See Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994).

In the context of a child welfare suit, a substantive due process claim requires "decision-making by a social worker that is so clearly arbitrary" that it "shock[s] the conscience." *B.S. v. Somerset Cty.*, 704 F.3d 250, 267 (3d Cir. 2013) (quoting *Miller v. City of Philadelphia*, 174 F.3d 368, 376 (3d Cir. 1999)). Whether the conduct "shocks the conscience" depends on the specific facts and circumstances of each case. *See Kaucher v. Cty. of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006). "Where a defendant has to act with some urgency, but does not have to make split-second decisions—such as when a social worker attempts to remove a child from the parents' custody—the defendant's actions must 'reach a level of gross negligence or arbitrariness'" that shocks the conscience. *Id.* (citation omitted). A child welfare employee's conduct shocks the conscience if the employee lacked an "objectively reasonable suspicion of abuse." *Croft v. Westmoreland County Children & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997).

Child welfare agencies may violate substantive due process rights when they fail to conduct a "reasonable, individualized investigation" of child abuse claims prior to initiating removal proceedings. *See Bower v. Lawrence Cnty. Children & Youth Servs.*, 964 F. Supp. 2d 475, 484 (W.D. Pa. 2013). For example, a substantive due process violation in the child welfare context occurred when a child was removed based on a "six-fold hearsay report" by an anonymous tip, *see Croft*, 103 F.3d at 1126, and when a days-old infant was removed based on a single positive drug test of the mother without any investigation or effort to corroborate the test, *see Bower*, 964 F. Supp. at 475; *Mort v. Lawrence Cty. Children & Youth Servs.*, No. 10-1438, 2011 WL 3862641 (W.D. Pa. Aug. 31, 2011).

On the other hand, there was no substantive due process violation when removal was based on a report of child abuse that contained "specific, credible, contemporaneous, and mutually consistent evidence," including interviews with the allegedly abused child. *See Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 243 (3d Cir. 2013); *see also Brown v. Daniels*, 128 F. App'x 910, 914 (3d Cir. 2005) (concluding that a CYF caseworker's conduct did not shock the conscience when removal was based on a report of physical abuse, a child's statement indicating fear of abuse, and evidence of multiple bruises on the child's thighs). In a recent case, the Third Circuit concluded that Plaintiffs did not sufficiently plead a substantive due process claim when a child welfare agency temporarily separated a two-month-old infant from his parents pending the results of a medical investigation. *See A.P. v. Medina*, 779 F. App'x 840, 841–42 (3d Cir. 2019). In that case, the CYF caseworker had completed "detailed reports and updates about her investigation," all of which were "[i]ntegral" to the plaintiff's complaint. *Id.* at 841. Based on these reports, the court determined that the caseworker "had a reasonable basis to continue her

investigation until genetic testing revealed [an] (extremely rare) explanation" for the child's injuries. *Id.*

But CYF investigations need not be conducted flawlessly. In *B.S. v. Somerset Cty.*, 704 F.3d 250 (3d Cir. 2013), a caseworker's conduct did not "shock the conscience," even though the caseworker may not have been "free from fault" and misstated information about the child's health. *B.S.*, 704 F.3d at 268; *see also Hatfield*, 714 F. App'x at 105 (concluding that a CYF caseworker's conduct did not "shock the conscience," even if her investigation into potential child abuse "was not thorough"). The court determined that the removal was nonetheless constitutional because the caseworker had reasonable suspicion of abuse based on a report from a doctor who had been treating the child "over the course of several months." *B.S.*, 704 F.3d at 268.

Here, Plaintiffs argue that County Defendants' actions "shocked the conscience" because they removed R.G. from his parents' care without conducting an individualized investigation. (ECF No. 36, at 9–10.) Specifically, Plaintiffs allege that County Defendants relied solely on one doctor's report, and that they failed to seek a more informed medical opinion despite being on notice of that doctor's potentially inadequate medical advice. (ECF No. 18, ¶¶ 63–64.) Plaintiffs aver that County Defendants conducted no other investigation, did not adequately consult Plaintiffs, were "rude" to Plaintiffs, "interrupted" Plaintiffs, refused to listen to Plaintiffs, ignored Plaintiffs' attempt to provide an alternative explanation for R.G.'s injury, and while doing all of those things, had rejected Plaintiffs' request and apparent need for a translator to allow them to meaningfully communicate. (ECF No. 18, ¶¶ 21, 22, 38, 18, 73.)

Though County Defendants agree that Plaintiffs have a protected liberty interest in the care and custody of their child, County Defendants note that they have a "counterbalancing interest in protecting children from abuse." (*See* ECF No. 29, at 7 (citing *Hatfield*, 714 F. App'x at 105).)

County Defendants argue that "[r]emoving an infant with a fractured leg from his parents as a temporary safety measure based on the opinion of a physician at [Children's Hospital] that the cause was suspected child abuse" does not amount to a substantive due process violation. (ECF No. 29, at 8.) At this procedural stage, to prevail on their dismissal motion, the Court would have to conclude as a matter of law that the facts as alleged could not support such a claim if proven.

Considering the particular circumstances of this case as they have been pled, the Court concludes that the Plaintiffs have plausibly pled that Defendants' actions failed to comply with constitutional mandates. Plaintiffs plead enough facts to support a conclusion that the removal of their eight-month-old baby in this situation could be found to have "shocked the conscience" and was done without a sufficiently individualized assessment of the specific facts involved here.

The Amended Complaint alleges that CYF initiated removal after taking the following steps: conferring with a UPMC physician, speaking with the non-English-speaking Plaintiff-parents without a translator present, and attending a "multi-disciplinary team meeting" with the physician and law enforcement officials as required by Pennsylvania law. Beyond this, no other investigation is alleged to have occurred. The initial removal allegedly occurred just one (1) day after Plaintiffs brought R.G. to the hospital, and the Amended Complaint does not refer to any "detailed reports" made by a CYF caseworker at any time. *See A.P.*, 779 F. App'x at 841. The dependency petition attached to the Amended Complaint indicates that no further investigation was conducted. (*See* ECF No. 18-1.) Apart from one non-treating physician's opinion about the cause of the fractured tibia, no other evidence is alleged to have indicated abuse. Unlike in *B.S.*, where the doctor's recommendation was based on a months-long history of care, Dr. Eichman had never treated R.G. prior to the events at issue in this case nor was there other evidence indicating abuse in R.G.'s medical record. *See B.S.*, 704 F.3d at 268. Equally notable is that this case does

not involve an "extremely rare" explanation for R.G.'s injury. *See id.* Rather, Plaintiffs allege that the alternative explanation for R.G.'s injury was "plausible," "quite common," "completely legitimate and sensical," "easily discoverable," and "backed by pediatric orthopedists." (ECF No. 18, ¶¶ 26, 37, 62.)

On top of this, County Defendants rejected the use of a translator, which allegedly resulted in a patent and material misrepresentation of Plaintiffs' statements to CYF. County Defendants reported in the dependency petition that Plaintiffs were unable to provide an explanation for R.G.'s injury. (*See* ECF No. 18-1.) But Plaintiffs aver that they posited all along that R.G. fractured his leg when it twisted in his crib—the precise diagnosis that the independent physician later submitted that prompted the return of R.G. to his parents' care. (ECF No. 18, ¶ 22.) It is thus odd that County Defendants nonetheless suggest that the Amended Complaint "does not describe what the parents could have provided to Ms. Pickens that should have clearly cast sufficient doubt in her mind sufficient to overrule Dr. Eichman's expert medical opinion." (ECF No. 29, at 9–10.) To the contrary, the Amended Complaint does just that.

County Defendants also argue that given Dr. Eichman's expert medical opinion, Plaintiffs' statements on the matter would not have made any difference in their investigation. But that description of CYF's investigative duties conflicts with the regulations implementing the Child Protective Services Law, which direct CYF to conduct an interview, "if possible," with the "child's parents" and "the alleged perpetrator" of the suspected child abuse (here, the child's parents). *See* 55 Pa. Code § 3490.55(d). Taking the facts alleged in the Amended Complaint as true, Plaintiffs establish that the caseworkers' interview of Plaintiffs—who speak little English—without a translator could be found to be tantamount to no interview at all. (*See* ECF No. 18, ¶ 22.)

Given the entirety of these particular circumstances, CYF's reliance on one doctor's assessment of child abuse without efforts to corroborate the report, and allegedly without a genuine ability to communicate with the parents due to a language barrier does not as a matter of law "supply reasonable suspicion of child endangerment or ongoing abuse" to justify immediate removal. *See Mort*, 2011 WL 3862641, at *10. Plaintiffs have thus pled enough facts to state a substantive due process claim.

### 3.  <u>Qualified immunity</u>

Having established that Plaintiffs plausibly state a substantive due process claim, the Court next turns to the Defendants' claim of qualified immunity as to Mr. Cherna and Ms. Pickens. This argument is well-taken.

State actors, including child welfare agency officials, *see, e.g.*, *Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186 (3d Cir. 2009), are entitled to qualified immunity as to federal claims "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *See Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The qualified immunity analysis is thus two-pronged: (1) whether the plaintiff alleged the deprivation of a constitutional right and (2) whether the right was clearly established at the time of the conduct. The court has discretion to decide which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this specific case, the Court opts to begin with the first prong due to the fact-specific nature of this area of law. By first deciphering the specific contours of the substantive due process right in this case, the Court can determine more efficiently whether that right is clearly established. *See id.* at 236, 242; *Brantley v. Wysocki*, 662 F. App'x 138, 142 & n.3 (3d Cir. 2016).

As discussed above, Plaintiffs allege sufficient facts to state a plausible substantive due process claim. As to the second part of the qualified immunity test, the right that Plaintiffs seek to enforce was not at the time of the conduct complained of so clearly established in this specific context so as to obviate the application of qualified immunity.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016), *as amended* (Mar. 21, 2016) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Id.* (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)).

Applying this test to Plaintiffs' Amended Complaint, the Court concludes that there was "no consensus of authority" that the conduct alleged violated substantive due process. *See Mammaro*, 814 F.3d at 170. In *Mammaro*, the Third Circuit emphasized the importance of considering the right at issue in light of the specific allegations in the complaint. *Id.* at 169–70. The court explained that for the plaintiff's case "to have legs she must show that the law was so well established at that time a reasonable caseworker would have understood that temporarily removing a child *in those circumstances* would violate substantive due process." *Id.* at 170 (emphasis added). The court went on to frame the right in that case narrowly: it considered the temporary removal of a child after the parent took the child out of state-approved housing without permission. *Id.* Here, a reasonable caseworker would not have been sufficiently on notice, based on applicable decisional law from the Supreme Court, our Court of Appeals, or a robust consensus

of the regional courts of appeal, that temporarily removing a child in the specific circumstances of this case—based solely on one doctor's report and a conversation with the parents who have advanced an alternate benign explanation for the injury and despite an evident language barrier—would violate substantive due process. Indeed, Plaintiffs fail to put forth any case or precedent to show that County Defendants were on notice by virtue of "clearly established" applicable precedent that their conduct was constitutionally prohibited.

The Court concludes that the right asserted here was not, for qualified immunity purposes, clearly established based on the facts pled. Mr. Cherna and Ms. Pickens are entitled to qualified immunity, and as a result, all federal claims against them will be dismissed with prejudice.

### E.  Unconstitutional policies and customs pursuant to 42 U.S.C. § 1983 (Count III)

The Court has addressed and dismissed the claims against Ms. Pickens, Mr. Cherna, and CYF, leaving only the claims against Allegheny County.

The only way for Allegheny County to be liable for the substantive due process violation is through what is commonly referred to as "*Monell* liability." A county cannot be held liable for its employees' alleged misconduct based on a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A county may only be sued under § 1983 where its own policies or customs cause constitutional injury. *Id.* In the context of this case, even if a child abuse investigation is found to be inadequate, a plaintiff's § 1983 claim will fail against the municipality where the plaintiff does not plead that the agency "employ[ed] a policy or ha[d] a custom of conducting desultory investigations." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 239 (3d Cir. 2013). But bald allegations of the existence of a policy are not enough to establish the county's liability; there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S.

378, 386 (1989). The plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

The Court first notes *Fagan v. City of Vineland* and its relevance to the claims against Allegheny County. As explained above, the claims against the individual County Defendants will be dismissed on qualified immunity grounds. In *Fagan*, the Third Circuit held that, in limited cases, a municipality can be held independently liable for violating a plaintiff's constitutional rights, even when there is no individual liability. *See Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994) ("A finding of municipal liability does not depend automatically or necessarily on the liability of any police officer."). *Fagan* involved a substantive due process claim resulting from a police pursuit, and its applicability and reach to other situations is limited. *See Estate of Thomas v. Fayette County*, 194 F. Supp. 3d 358, 378–79 (W.D. Pa. 2016) (listing cases considering the limited reach of *Fagan*); *see also Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 n.5 (3d Cir. 2003).

This Court previously addressed in detail the "*Fagan* conundrum." *See Thomas*, 194 F. Supp. 3d at 380. The Court explained that "[a]t its heart, *Fagan* was concerned with . . . situations in which 'municipal policymakers, acting with deliberate indifference or even malice, implemented a policy which *dictated* [the individual official's] injury causing actions' even though the [individuals] themselves remain 'ignorant of the danger created' by their actions—and thus free from liability under § 1983's strict mental state requirements." *See id.* In the Court's view, "the key to untangling *Fagan* is to analyze whether, in [the specific] case, any alleged municipal policy or custom could be found to have 'caused' the alleged constitutional deprivation." *Id.* Here, as discussed below, Plaintiffs fail to adequately allege such causation.

The Amended Complaint states that County Defendants have a policy of obtaining emergency custody authorizations without conducting competent investigations. This policy allegedly results in the wrongful removal of children. Specifically, Plaintiffs frame the unconstitutional policy as one that directs CYF to rely only on the medical investigative services of the CAC. (ECF No. 36, at 13–14.) As a result, parents "foreseeably risk having their rights infringed upon through emergency custody authorizations." (*See* ECF No. 18, ¶ 91.)

But the Amended Complaint does not plausibly connect such a County policy to the deprivation of Plaintiffs' rights. The policy, as set forth in the Amended Complaint, is stated only in a conclusory fashion and allegedly instructs CYF to rely on the medical expertise of the CAC physicians. Plaintiffs plead that consultation with CAC physicians is Allegheny County's "only medical investigative tool." (ECF No. 18, ¶ 90.) But this does not plausibly mean that it is the County's only investigative tool, just its only *medical* one. Such a policy, if it existed, does not foreclose CYF from conducting further investigation. Other cases involving substantive due process claims against Allegheny County or Allegheny County CYF reference more comprehensive investigations than what allegedly occurred in this case, including adequately interviewing the alleged perpetrators, family members, or witnesses. *See, e.g.*, *A.L. v. Eichman*, 376 F. Supp. 3d 547 (W.D. Pa. 2019) (noting a CYF investigation that included reliance on a CAC physician's report, interviews with the parents of the allegedly abused child, and an inspection of the parents' home). Thus, there appears to be a plausible basis from other reported cases to conclude that the County's policy was one that would have been legally appropriate, and therefore that in reality, the core of Plaintiffs' claims is that the County did not actually implement in this case its actual policy. And the Amended Complaint does not plausibly assert any basis to conclude

that the County in essence had a custom of ignoring its actual policy, and that it was such conduct that caused harm here.

There are no allegations in the Amended Complaint to support a conclusion that Plaintiffs' substantive due process rights were violated as a result of a County policy, and that such caused the harm complained of. Plaintiffs thus fail to state a claim against Allegheny County, and the claims against it will also be dismissed.[4] But, because the Court cannot conclude on this record that any effort to amend this claim would be futile, it will permit the Plaintiffs one further opportunity to amend to state such a claim.

### F.  Remaining claims

In their Amended Complaint, Plaintiffs also bring a state law intentional infliction of emotional distress claim against all County Defendants. (*See* ECF No. 18, ¶¶ 106–12.) The County Defendants did not move to dismiss this claim. But this is a claim arising only under Pennsylvania state law, and the Plaintiffs do not posit any independent basis to assert federal jurisdiction over such a state law claim against those Defendants. There does not appear to be any basis to conclude that there is diversity of citizenship as between the Plaintiffs and those Defendants, and it further appears that there would be a high, if not insurmountable, bar to those state law claims under Pennsylvania's statutory provision of immunity to the County and its employees. But that need not be conclusively resolved here and now.

The Amended Complaint also alleges two (2) state law claims against the UPMC Defendants. There does not appear to be any independent basis to assert federal subject matter jurisdiction against the UPMC Defendants, since there does not appear to be any diversity of

---

[4] Because a municipality "may not be held vicariously liable under § 1983 for the actions of its agents," Count II will be dismissed with prejudice against Allegheny County. *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

citizenship between the Plaintiffs and those Defendants. The UPMC Defendants filed a Motion to Dismiss and a Motion to Strike.

Because the Court is dismissing the federal claims at issue in this case against all County Defendants who have been served, it will not at this point address the UPMC Defendants' Motion to Dismiss or Motion to Strike, given that as to one federal claim, the Plaintiffs are being provided with one further opportunity to amend, as noted above. *See Bright v. Westmoreland Cty.*, 443 F.3d 276, 286 (3d Cir. 2006) (explaining that, absent extraordinary circumstances, where the claim over which the district court has original jurisdiction is dismissed before trial, the district court should decline to decide the pendent state claims).

## IV.   <u>CONCLUSION</u>

For the reasons stated, the County Defendants' Motion to Dismiss at ECF No. 28 is granted as follows.

Counts II and III will be dismissed with prejudice against Ms. Pickens, Mr. Cherna, and CYF because it would be futile to amend given the dispositions noted above. Count II will also be dismissed with prejudice against Allegheny County because a municipal entity cannot be vicariously liable for the actions of its employees.

Count III will be dismissed without prejudice against Allegheny County. Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). In the interests of justice, and to the extent that Plaintiffs believe that amendment would not be futile, Plaintiffs have twenty-one (21) days from the date of this Opinion to file a Second Amended Complaint consistent with this Opinion as to claims against the County at Count III. Should Plaintiffs not file a Second Amended Complaint by the specified date, the dismissal shall then convert to a dismissal with prejudice without further Order or notice.

25

Plaintiffs must serve Defendant Moultrie with the summons and Amended Complaint within fourteen (14) days of the date of this Opinion, and also file a verification of such service on the docket within that time period. Should Plaintiffs fail to do so, all claims against her will be considered as of that date to be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) without further Order or notice.

If no federal claim survives against any of the County Defendants, the Court will decline to assert supplemental jurisdiction over the balance of the claims asserted, which would be solely state law claims against the UPMC Defendants and one state law claim against the County Defendants, and would dismiss those claims without prejudice to their assertion in state court. Therefore, the Court will for the time being hold disposition of the pending Motions to Dismiss and to Strike filed by the UPMC Defendants in abeyance pending further procedural developments in this case.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  January 15, 2021

26